# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1693

_____

United States of America,                 *

                             *

          Appellee,         *

                             *   Appeal from the United States

    v.                      *   District Court for the

                             *   District of South Dakota.

Ronald Gene Kenyon, also known as   *

Ronald G. Bingen,             *

                             *

          Appellant.       *

_____

Submitted: October 17, 2006
Filed: April 9, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This appeal arises from a re-trial of Ronald Kenyon on charges that he sexually abused A.L., a child under the age of twelve at the time. At Kenyon's first trial, a jury convicted him on three counts of aggravated sexual abuse and two counts of abusive sexual contact. We reversed the convictions based on the improper admission of hearsay testimony that prejudiced Kenyon, and remanded the case for further proceedings. *United States v. Kenyon*, 397 F.3d 1071 (8th Cir. 2005) ("*Kenyon I*"). After a second trial, the jury convicted Kenyon of four counts of aggravated sexual

abuse of a child, in violation of 18 U.S.C. §§ 1153, 2241(c), 2246(2)(A), 2246(2)(B), and 2246(2)(D).

On appeal, Kenyon challenges several evidentiary rulings, the sufficiency of the evidence, the jury instructions, and the court's calculation of his offense level under the United States Sentencing Guidelines. We find no reversible error in the court's rulings on evidence or final argument, and we affirm the convictions on Count I and IV of the indictment. We conclude, however, that the conviction on Count II must be reversed based on an erroneous jury instruction, and that there was insufficient evidence to support the conviction on Count V. We remand the case for further proceedings.

I.

The background of this case and Kenyon's first trial are described in our prior opinion. *Kenyon I*, 397 F.3d at 1074-1075. According to evidence presented in the second trial, during the three years preceding April 2003, when A.L. was between the ages of eight and eleven, she was a regular overnight guest at the home of Ronald Kenyon and his common-law wife, Mona LaRoche. On April 9, 2003, A.L.'s guardians, Robin and Dale Middletent, took her to the Children's Safe Place in Fort Thompson, South Dakota, on an unrelated matter. While there, A.L. was interviewed by a physician's assistant, Renette Kroupa, and A.L. told Kroupa that Kenyon had touched her private areas when she stayed at his home.

During Kenyon's first trial, Kroupa testified in detail about the interview with A.L. *Kenyon I*, 397 F.3d at 1075. We held that Kroupa's testimony was inadmissible hearsay that had improperly bolstered A.L.'s account and, in some areas, expanded on the facts to which A.L. herself testified at the trial. *Id.* at 1079-82. In one instance, the hearsay testimony from Kroupa provided the only evidence necessary to establish

an element of an offense of conviction. *Id*. at 1078-79, 1081. We therefore reversed Kenyon's convictions and remanded the case to district court. *Id.* at 1082.

The government obtained a superseding indictment against Kenyon, charging him with five counts of attempted aggravated sexual abuse of a child in Indian country, in violation of 18 U.S.C. §§ 1153 and 2241(c). Count I alleged sexual touching of A.L.'s genitalia, *see* 18 U.S.C. § 2246(2)(D); Count II charged contact between the penis and the vulva involving penetration, *see* § 2246(2)(A); and Counts IV and V alleged contact between the penis and mouth, *see* § 2246(2)(B). Each count charged that Kenyon had committed the sexual acts and attempted to do so. Count III, which alleged contact between the penis and anus, was dismissed on the motion of the government during trial.

At Kenyon's second trial, A.L. described several different encounters with Kenyon. She stated that on multiple occasions, Kenyon moved his hand back and forth on her vagina. She testified that on another occasion, he unsuccessfully tried to insert his penis into her vagina. And she testified that at least once, and maybe twice, he caused contact between his penis and her mouth. She also stated that she had not disclosed the abuse before her interview with Kroupa because she was scared of Kenyon, both as a result of threats he had made and because of violence she had witnessed.

Rennette Kroupa testified in a far more limited manner than in Kenyon's first trial. She testified that A.L. had described a significant, reportable event to her, and explained her physical evaluation of A.L., but Kroupa did not recount A.L.'s description of the abuse. She did, however, repeat two comments made by A.L. that are disputed on appeal. Kenyon testified in his own defense, denying any wrongdoing and suggesting that A.L. had accused him because he made her do chores around the house.

-3-

The jury convicted Kenyon on Counts I, II, IV, and V. At sentencing, in determining the advisory guideline sentence, the court applied a two-level adjustment under § 2A3.1(b)(3)(A), because A.L. had been in Kenyon's "care, custody, or control" at the time of the abuse. The court determined that Kenyon's advisory guideline sentencing range was 324 to 405 months' imprisonment, and imposed a sentence of 324 months.

II.

Kenyon appeals several evidentiary rulings made at his trial, and argues that all four counts of conviction should be reversed based on these alleged errors. He challenges the admission of evidence that he had engaged in domestic violence, expert testimony that he says was received without proper notice or a required hearing on reliability, and hearsay testimony from Renette Kroupa. Kenyon also argues that the court abused its discretion by excluding certain evidence, including part of his intended cross-examination of A.L. and some testimony from Mona LaRoche. We review the district court's evidentiary rulings for abuse of discretion. *Kenyon I*, 397 F.3d at 1079.

A.

During the trial, A.L. testified that Kenyon had threatened to kill her if she told anyone about the sexual abuse, and the government later asked her a series of follow-up questions. Among other things, the prosecutor asked A.L. if, when she was "ten and eleven; eight, nine, ten, and eleven," she had "ever seen the Defendant violent towards anyone else in the home?" (*Id.* at 68). When A.L. answered yes, the prosecutor then asked her, "And were you fearful, because of what you had seen?" (*Id.*). A.L. again answered affirmatively. This sort of evidence is admissible to explain a victim's failure to report sexual abuse, *United States v. Plumman*, 409 F.3d

-4-

919, 928 (8th Cir. 2005), and the district court took steps to avoid unfair prejudice by giving a limiting instruction to the jury. (T. Tr. at 63).

Kenyon objected to this testimony. He argues that while evidence of violence causing fear in the victim may be admissible in some circumstances, *see Plumman*, 409 F.3d at 928, the evidence here was misleading, and the prosecutor's questions improper. A.L. had testified outside the presence of the jury that she observed Kenyon beat Mona LaRoche one time, and hit her children "a whole bunch of times," apparently when she was "maybe ten or eleven." (T. Tr. at 60). Kenyon claims that the prosecutor's phrasing of the questions at trial – referring to when A.L. was "eight, nine, ten, and eleven" – created the false impression that she continually observed Kenyon beating LaRoche and their children during the period he was allegedly abusing A.L. Kenyon suggests that domestic violence occurred only when A.L. was ten or eleven years old, and that it cannot explain A.L.'s failure to report Kenyon's sexual abuse, because the domestic violence took place near the end of the period during which A.L. claims she was abused by Kenyon.

We conclude that the evidentiary rulings were not an abuse of discretion. That A.L. said in the preliminary hearing that the violence occurred when she was "maybe ten or eleven" did not preclude the prosecutor from inquiring whether she also witnessed violence when she was eight or nine years old. And even if, in point of fact, all of the violence occurred when A.L. was ten or eleven, the district court's admission of the testimony was still not erroneous. Kenyon had an opportunity to cross-examine A.L. to clarify the precise years in which she witnessed the violence. He was free to use her prior testimony as potential impeachment material, and to ask questions designed to narrow the time frame of the domestic violence, if possible. His failure or inability to do so is not a basis to conclude that there was error in allowing A.L.'s answer on direct examination.

-5-

Kenyon also appeals the admission of the testimony of Dr. Rich Kaplan, a professor of pediatrics at the University of Minnesota School of Medicine and associate medical director at Midwest Children's Resource Center. Kaplan testified as an expert for the government regarding various characteristics of abused children. This testimony was offered by the prosecution to demonstrate that A.L.'s characteristics were not inconsistent with those of an abused child.

Kenyon challenges Dr. Kaplan's testimony on two grounds. First, he argues that a hearing was required to determine the reliability of the expert testimony before it could be admitted. Second, he argues that the government failed to provide him with adequate notice of the contents of Dr. Kaplan's testimony, as required by Federal Rule of Criminal Procedure 16(a)(1)(G). We review the court's decision to admit expert testimony for abuse of discretion. *United States v. Evans*, 272 F.3d 1069, 1094 (8th Cir. 2001).

Before admitting testimony based on scientific, technical or other specialized knowledge, a district court must ensure that the testimony rests on a reliable foundation. *Daubert v. Merrell Dow Pharm., Inc.*, 509 US. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). A district court, however, enjoys "broad latitude when it decides *how* to determine reliability," *Kumho Tire Co.*, 526 U.S. at 142 (emphasis in original), and "[t]here is no requirement that the District Court always hold a *Daubert* hearing prior to qualifying an expert witness." *United States v. Solorio-Tafolla*, 324 F.3d 964, 965-66 (8th Cir. 2003) (internal citation omitted). When a district court is satisfied with an expert's education, training, and experience, and the expert's testimony is reasonably based on that education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing. *Id.* at 966; *Evans*, 272 F.3d at 1094.

At trial, Dr. Kaplan testified that children who are victims of sexual abuse do not always show signs of physical injury, that they may conceal the abuse for

significant periods of time, that they may have difficulty describing the abuse in detail, and that the aggressiveness and extent of the abuse often increase as the abuse continues. He stated that his testimony was based on personal experience with roughly five thousand victims of child abuse. The government asked Dr. Kaplan about scientific studies of abuse victims, but the court consistently sustained Kenyon's objections to these questions. Only once, when Kenyon failed to object to such a question, did Dr. Kaplan testify that what he had observed in his practice – children's reluctance to disclose sexual abuse – was also supported by the opinions of other experts. Given that this fact was also supported by Dr. Kaplan's experience and that its validity has not been questioned by the defendants, its inclusion without a prior determination of its reliability was not plain error. Otherwise, the entirety of Dr. Kaplan's testimony was based on his extensive and unchallenged experience, and the court did not abuse its discretion in admitting it without a preliminary hearing to determine its reliability.

Kenyon also claims that Dr. Kaplan's testimony was admitted in violation of the disclosure requirements of Federal Rule of Criminal Procedure 16. Rule 16(a)(1)(G) states that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." This summary "must describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Here, the government notified Kenyon that Dr. Kaplan would testify regarding the medical evidence in sexual abuse cases, and the emotional and physical characteristics of abused children. The government, however, failed to notify Kenyon specifically that Dr. Kaplan would testify that the extent of sexual abuse generally increases over time. Kenyon claims that because of this omission, Rule 16(a)(1)(G) required the district court to limit Dr. Kaplan's testimony. He contends that the Kaplan testimony on this point impermissibly corroborated A.L.'s testimony, in which she described an increase in the extent of abuse over time.

A defendant asserting reversible error under Rule 16(a)(1)(G) must demonstrate prejudice resulting from the district court's decision to admit the contested testimony. *United States v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006). Kenyon has not challenged the validity of Dr. Kaplan's statement, apparently agreeing with the district court that it is "common sense." (T. Tr. at 174; Appellant's Br. at 46). He did not object when Dr. Kaplan first offered this testimony or seek a continuance to react to ostensibly unexpected evidence. He has not argued that if had he received earlier notice of this evidence, then he would have been able to force its exclusion or to present a more effective defense. Thus, Kenyon has not established prejudice, and the admission of the testimony was not reversible error.

Returning to the theme of his first appeal, Kenyon contends that the district court improperly allowed Renette Kroupa, the physician's assistant at the Children's Safe Place, to provide hearsay testimony. During her testimony in the second trial, Kroupa repeated two statements made to her by A.L. First, Kroupa testified that as she was interviewing A.L. at the Children's Safe Place, A.L. spontaneously said, "I need to talk to you about something really bad." (T. Tr. at 150). Kroupa later testified that when A.L. returned to her guardians, Robin and Dale Middletent, after the interview, "she started to cry real hard and [said], '[P]lease don't be mad at me for not telling.'" (*Id.* at 154). Kenyon objected to these statements as inadmissible hearsay, but the district court admitted them under the excited utterance exception to the hearsay rule. *See* Fed. R. Evid. 803(2).

We are not convinced that these statements are admissible as excited utterances. That exception to the rules against hearsay evidence permits admission of a statement relating to a startling event or condition that is made by a declarant still "under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). To determine whether a declarant was still under the stress of a startling event, we consider, *inter alia*, the amount of time that has elapsed since the event and whether the declarant's stress or excitement was continuous from the time of the event until

the time of the statements. *See United States v. Marrowbone*, 211 F.3d 452, 455 (8th Cir. 2000); *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999).

In *Reed*, we held that a two year-old child's allegation of abuse made within forty-eight hours of the alleged abuse was not admissible under the excited utterance exception to the Confrontation Clause, primarily because of this lapse of time. *Id.* at 1061-62. We reasoned that a two year-old's "excited" recollection of an event that occurred days or even months earlier was not "so inherently trustworthy" as to fall within the exception. *Id.* at 1062. In *Marrowbone*, we held that allegations of abuse made by a teenager three hours after the alleged abuse were not admissible as excited utterances because of the lapse of time. 211 F.3d at 455. In *United States v. Iron Shell*, 633 F.2d 77 (8th Cir. 1980), we found it was a "close question" whether the district court properly admitted statements of nine year-old girl made forty-five to seventy-five minutes after a sexual assault, but ultimately held that the decision was not an abuse of discretion. *Id.* at 86-87. A.L. made the contested statements on April 9, 2003, some three years after the first alleged instance of abuse, and roughly a week after the most recent abuse. Given those lapses of time, we do not think it can reasonably be said that A.L. was still under the stress or excitement caused by a startling event when she made the disputed statements, and the district court thus erred by admitting Kroupa's testimony on this ground.

We conclude, however, that this non-constitutional evidentiary error was harmless. *See Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946). Kroupa's recounting of A.L.'s brief, general statements provide little support for A.L.'s credibility and had little potential for prejudice. Indeed, this sort of testimony typically is admissible as "[p]reliminary information concerning the origin of an investigation," *United States v. Running Horse*, 175 F.3d 635, 638 (8th Cir. 1999), and although the district court gave no limiting instruction with respect to the evidence, we think it unlikely that the jury gave it greater effect. A.L. already had testified that she informed Kroupa of the abuse during her interview at the Children's Safe Place,

and that she had failed to tell any other adults of the abuse because she was afraid. In light of this testimony, Kroupa's testimony concerning A.L.'s comments was largely cumulative, and cumulative statements are usually harmless. *See Iron Shell*, 633 F.2d at 86-87.

In *Kenyon I*, we declined to hold Kroupa's hearsay presentation of A.L.'s account harmless error because "Kroupa's testimony had the potential to bolster A.L.'s credibility through an articulate description of the alleged abuse, and to augment A.L.'s testimony with additional details in certain areas." 397 F.3d at 1082. In Kenyon's second trial, Kroupa did not describe A.L.'s alleged abuse. Her testimony did not improperly bolster A.L.'s testimony by providing a more articulate and detailed account of the abuse, and it did not provide the missing piece of evidence necessary to prove an element of the charged offense, as did Kroupa's hearsay testimony in the first trial. We are confident that the two disputed statements did not have a "substantial influence" on the outcome of the trial. *Kotteakos*, 328 U.S. at 765.

B.

Kenyon also challenges the district court's refusal to allow him to cross-examine A.L. concerning what he claims were false allegations of sexual contact that A.L. made against William Russell, a one-time schoolmate of A.L., and Cody Russell, her uncle. Kenyon sought to ask A.L. about these allegations as part of an attack on A.L.'s character for truthfulness under Federal Rule of Evidence 608(b). He contends that the district court's exclusion of this evidence was error under the rules of evidence and violated his rights under the Confrontation Clause. We review evidentiary rulings regarding the scope of a cross examination for abuse of discretion, *United States v. Beal*, 430 F.3d 950, 955-56 (8th Cir. 2005), but where the Confrontation Clause is implicated, we consider the matter *de novo*. *United States v. Urqhart*, 469 F.3d 745, 748 (8th Cir. 2006).

-10-

Under the rules of evidence, "specific instances of the conduct of a witness" may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness." Fed. R. Evid. 608(b). Even if such evidence is sufficiently probative to gain admission under Rule 608(b), however, a district court may exclude it if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *Beal*, 430 F.3d at 956. The Confrontation Clause similarly contemplates that "evidence alleging that an accuser made false prior accusations may be excluded if the evidence has minimal probative value." *See United States v. Tail*, 459 F.3d 854, 860 (8th Cir. 2006).

Here, the district court found that the witnesses – young girls who had claimed in a prior evidentiary hearing that A.L. had made allegations against William Russell and Cody Russell – were not credible, because their testimony was plagued by errors and contradictions. ( R. Doc. 142, Tr. of Final Mot. Hr'g at 70). The court also found that even if true, their testimony proved only that A.L. "may have been talking with other seventh graders about claimed sexual activities." (*Id.* at 71). Since the alleged accusations were never made to an authority figure, the court reasoned, they amounted at most to childish gossip, rather than actual accusations of sexual abuse. The court therefore ruled that any evidence relating to the allegations had no probative value and would waste time and confuse the jury.

We do not think this ruling was an abuse of discretion or inconsistent with the Confrontation Clause. The evidence of falsity was weak, and there was no showing that A.L.'s accusations against Kenyon were part of a broader scheme also involving contrived allegations against the Russells. *Cf. United States v. Stamper*, 766 F. Supp. 1396, 1402-03 (W.D.N.C. 1991), *aff'd sub nom. In re One Female Juvenile Victim*,

No. 91-5334, 1992 WL 63334 (4th Cir. Apr. 1, 1992) (unpublished).[1] Accordingly, the testimony was properly excluded. *See Tail*, 459 F.3d at 861.

Kenyon also contends that the district court abused its discretion by preventing William Russell from offering his opinion of A.L.'s character for truthfulness. *See* Fed. R. Evid. 405(a). The court's ruling, however, came after Kenyon's counsel asked Russell whether he had "an opinion as to [A.L.'s] *reputation* for truthfulness or untruthfulness in the community." (T. Tr. at 233-34). When Russell answered with his opinion concerning A.L.'s *character* for truthfulness or untruthfulness, he volunteered information that was not responsive to the question. Therefore, the court properly ordered the answer stricken and directed Russell to answer the question that was asked. Kenyon never returned to the subject of A.L.'s character for truthfulness, and never asked Russell a question that would have elicited his opinion on that subject. Accordingly, the district court's ruling was proper.

Kenyon next claims that the district court improperly excluded two portions of the proposed testimony of Mona LaRoche, Kenyon's common-law wife. First, LaRoche testified that she had asked R.K. and J.K., children who shared a bed with A.L. when she stayed with LaRoche and Kenyon, whether they noticed anything that would support A.L.'s accusations of abuse against Kenyon. Kenyon's counsel then asked LaRoche if R.K. or J.K. had provided her "with any information suggesting anything happened." (T. Tr. at 189). LaRoche answered "No," but the prosecution objected on hearsay grounds, and the answer was stricken. (*Id.*). Kenyon now argues that the court erred in striking LaRoche's answer. Kenyon claims that the question

---

[1]Indeed, it turns out that the district court was quite right to evince skepticism of the allegations of falsity, for William Russell has since pled guilty to making a false declaration before a court and admitted that he *did engage* in sexual activity with A.L. (R. Doc. 23, Factual Basis Statement at 2, *United States v. William Russell*, No. 3:06-CR-30081-CBK (D.S.D. Sept. 29, 2006)).

did not call for hearsay, because counsel did not ask LaRoche the content of statements by R.K. and J.K., but only whether a statement had been made.

Kenyon defines hearsay too narrowly. Hearsay includes any "oral or written assertion or . . . nonverbal conduct of a person, if it is intended by the person as an assertion" and "offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. In some circumstances, silence itself can be such a nonverbal assertion. *See Rhan v. Hawkins*, 464 F.3d 813, 821 (8th Cir. 2006) ("[A] statement is attributable to a person when he or she stands silent in the face of its utterance if the natural response would be to deny it if untrue."). Here, LaRoche testified that she had asked R.K. and J.K. about A.L.'s allegations against Kenyon, and defense counsel then inquired whether the children provided "any information suggesting anything happened." (T. Tr. at 189). A negative response from LaRoche would have signified that the children provided no information "suggesting anything happened," and the defense sought to suggest that the natural response of the children would have been to report abuse if they had seen it. Kenyon's effort to offer LaRoche's negative answer, therefore, was an attempt to offer nonverbal conduct of R.K. and J.K. as evidence that Kenyon had not abused A.L. The question called for hearsay, and LaRoche's response was properly stricken.

Second, Kenyon challenges the district court's refusal to allow LaRoche to testify that she been separated from Kenyon for roughly two years before his second trial. The court excluded this evidence as irrelevant, but Kenyon argues that it was crucial to buttress LaRoche's credibility. The government sought to portray LaRoche as biased by identifying her as Kenyon's common-law wife, and Kenyon argues that evidence of separation would have tended to lessen the impression of bias.

We see no abuse of discretion in this ruling, because the "separation" of Kenyon and LaRoche was caused by an order of the district court. As a condition of Kenyon's pretrial release, he was placed in the custody of his mother and stepfather,

ordered to have only supervised contact with his own children, and forbidden to have overnight stays with his children. (R. Doc. 18, at 2, 4). That Kenyon was "separated" from LaRoche by court order for the two years before his second trial, therefore, seems irrelevant to whether LaRoche would be biased in his favor due to their common-law marital relationship. Indeed, LaRoche acknowledged that she still considered Kenyon to be her "husband." (T. Tr. at 196). To the extent there is some minimal relevance to the fact that LaRoche and Kenyon were forced to cease their common living arrangements, we think the probative value is outweighed by the confusion and prejudicial effect of allowing the government to explain that the separation was caused by stringent conditions of release, rather than by a breakdown in the LaRoche-Kenyon relationship. Accordingly, we perceive no reversible error in this ruling.

## C.

Kenyon also appeals the district court's denial of his motion for a mistrial based on comments made by the government during closing arguments. During Kenyon's closing argument, his counsel asked rhetorically why the prosecution had failed to call Kenyon's children, R.K. and J.K., who slept in the same bed as A.L. at the time the alleged abuse occurred. The government objected, arguing that "[t]he defendant has the power of subpoena. They can call anyone in the world also." The trial court overruled the objection, noting that defendants "don't have to call any witnesses." Later, during his rebuttal argument, the prosecutor made the following statement:

> Yes, the Defendant has no obligation to subpoena any witness or present any evidence. That's the law. But the Defendant in this case decided to subpoena people for his defense, and brought people here. So, he has the power to bring people here, and he did in this case. Where is [R.K.] and [J.K.]–?

(*Id.* at 350).

-14-

Kenyon's counsel objected that the government was "implying that it's my burden to put on these witnesses, and it's not." (*Id.*) The prosecutor replied that he was not implying that Kenyon had a burden of proof, but only that Mona LaRoche had custody of the children. The court reiterated that Kenyon had "no burden to bring any evidence," directed the prosecutor to "move on," and admonished that "I don't want you arguing that." (*Id.*)

"We have previously held that when a defendant attacks the government's failure to call certain witnesses and suggests that those witnesses might have exonerated him, then the government may point out that the defendant also had the power to subpoena witnesses." *United States v. Long Feather*, 299 F.3d 915, 919 (8th Cir. 2002); *see United States v. Flynn*, 196 F.3d 927, 930-31 (8th Cir. 1999); *United States v. Kragness*, 830 F.2d 842, 872 (8th Cir. 1987). This rule is a manifestation of the general proposition that "[i]n closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." *Long Feather*, 299 F.3d at 919 (quoting *Flynn*, 196 F.3d at 930). In view of our decisions in this area, we doubt that it was improper for the prosecutor to note that Kenyon had the power to subpoena children who were in the custody of his common-law wife, particularly where the prosecutor prefaced his remarks by acknowledging that Kenyon had "no obligation to subpoena any witness or present any evidence." (T. Tr. at 350). But in this instance, the court actually *sustained* Kenyon's objections to the prosecutor's comments, and then reminded the jury that Kenyon had no burden to produce any evidence. We therefore have no difficulty in concluding that this aspect of the closing argument caused no prejudice to Kenyon that deprived him of a fair trial.

Kenyon also moved for a mistrial based on another rhetorical question asked by the prosecutor during his closing argument: "[C]an you really believe that an eleven year old at that time, an eleven year old is going to be able to concoct a story that goes through the whole legal system, with all the detail that you heard about?"

-15-

(*Id.* at 352). Kenyon's counsel objected to this remark, and the court overruled the objection. Kenyon contends that the prosecutor's comment suggested that any allegation that survives the "whole legal system" long enough to go to trial must be true. He says the comment improperly "bolstered" A.L.'s credibility and effectively reversed the burden of proof.

We think the prosecutor's argument is problematic, because the disputed statement may well be read to suggest that the jury should be influenced by the fact that others in the "legal system" must have believed A.L.'s testimony in order for the case to proceed to trial. *See United States v. Benitez-Meraz*, 161 F.3d 1163, 1167 (8th Cir. 1998) ("Improper vouching may occur when the government . . . refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury."). It is well established, however, that "not every impropriety of argument calls for a new trial or for a reversal of the judgment of conviction." *United States v. Pierce*, 792 F.2d 740, 742 (8th Cir. 1986) (quoting *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985)). The ultimate question is whether the prosecutor's comments, if improper, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Mullins*, 446 F.3d 750, 757 (8th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Although the district court overruled the objection to the prosecutor's remark, the court did specifically instruct the jury that arguments by the lawyers were not evidence, and that the grand jury's return of an indictment was no evidence of guilt. (R. Doc. 125, Final Jury Instructions Nos. 3, 5). The court repeatedly reminded the jury that the defendant is presumed innocent, and that the government bore the burden of proof beyond a reasonable doubt. (Final Jury Instructions No. 3, 11-14). The jury was instructed that it was the judge of what testimony to believe or not to believe. (Final Jury Instruction No. 7). We see no reasonable likelihood that this single comment in final argument led the jury to believe that the burden of proof was

-16-

reversed. The entirety of the court's instructions made clear to the jury that it was responsible for judging A.L.'s credibility, independent of whatever opinion may have been reached by the prosecutor or the grand jury. We ultimately conclude that any perception of improper bolstering through the prosecutor's reference to the "whole legal system" was not so great as to deprive Kenyon of a fair trial.

In summary, we conclude that the district court's rulings on evidence and argument were largely correct. Viewing the record as a whole, we do not believe that the errors identified, considered individually or cumulatively, deprived Kenyon of a fair trial or substantially influenced the verdict.

III.

Kenyon next challenges the sufficiency of the evidence on Counts II, IV, and V. He also asserts that the court's instructions to the jury on these counts were flawed.

A.

Count II alleged that Kenyon had engaged or attempted to engage in sexual abuse in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(A). Sections 1153 and 2241(c) make it unlawful, for an Indian within Indian country, knowingly to engage in a sexual act with a person under twelve years of age, or to attempt to do so. Section 2246(2)(A) defines "sexual act" to encompass contact between the penis and the vulva, with contact defined as occurring "upon penetration," however slight. 18 U.S.C. § 2246(2)(A). In reviewing for sufficiency of the evidence, "we view the evidence in the light most favorable to the verdict, and we will overturn a conviction only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge." *Kenyon I*, 397 F.3d at 1076 (internal quotation omitted).

-17-

We conclude that the government produced sufficient evidence to support a conviction of attempted sexual abuse in violation of §§ 2241 and 2246(2)(A). The required elements of an attempt are "(1) an intent to engage in criminal conduct, and (2) conduct constituting a 'substantial step' toward commission of the substantive offense which strongly corroborates the actor's criminal intent." *United States v. Plenty Arrows*, 946 F.2d 62, 66 (8th Cir. 1991) (internal quotation omitted). A.L. testified that Kenyon, while naked and aroused, took off her clothes, moved up and down on top of her for five or ten minutes, and unsuccessfully tried to put his penis into her vagina. This testimony provided sufficient evidence for a jury to find both that Kenyon had the intent to sexually abuse A.L., and that he had taken a substantial step to do so. That there was insufficient evidence to prove actual penetration does not preclude a conviction under Count II, because we presume that the jury reached its verdict based on the alternative theory of attempt, for which the evidence was sufficient. *Griffin v. United States*, 502 U.S. 46, 59 (1991).

Kenyon further contends the district court erred by denying his motion for judgment of acquittal on either Count IV or V. Counts IV and V both alleged that Kenyon violated 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(B) by causing contact between his penis and A.L.'s mouth. The jury convicted Kenyon on both counts, but he argues that the jury at most had evidence sufficient to convict him of one count. To support both convictions, the record, viewed most favorably to the government, must contain substantial evidence supporting the jury's verdict on each count. This means that there must be evidence sufficient to prove beyond a reasonable doubt that Kenyon caused contact between A.L.'s mouth and his penis on two different occasions. *See generally United States v. Lopez*, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc).

In her testimony on direct examination, A.L. recounted only one incident of sexual abuse involving contact between Kenyon's penis and her mouth. (T. Tr. at 51-54; S. Tr. at 35). On redirect examination, the prosecutor asked A.L. specifically,

-18-

"how many times did he try to put his penis in your mouth, do you believe?" A.L. answered, "Twice maybe. I don't know." (*Id.* at 114). At the conclusion of her examination, the court asked A.L. a series of questions on the subject:

> THE COURT: When do you say that Mr. Kenyon attempted to put his penis in your mouth?
>
> THE WITNESS: Like a date? I don't have a date. I can't remember.
>
> THE COURT: Well, with reference to when you talked with Renette Kroupa on April 9, 2003, does that give you any information?
>
> THE WITNESS: No.
>
> THE COURT: *And you don't know whether he did it once or twice?*
>
> THE WITNESS: *No.*

(T. Tr. at 120) (emphasis added).

In light of this record, the question on sufficiency of the evidence reduces to whether A.L.'s statement that Kenyon caused contact between his penis and her mouth "[t]wice maybe," followed immediately by, "I don't know," together with her subsequent statement to the court that she did not know whether Kenyon did it once or twice, is sufficient for a reasonable jury to find beyond a reasonable doubt that Kenyon did it twice. We think not. A.L. herself was simply unable to testify to her belief that Kenyon twice caused contact between his penis and her mouth. Her testimony that "maybe" it occurred twice, uncorroborated by any independent evidence of such encounters, is not substantial evidence on which a reasonable jury could base a finding of guilt beyond reasonable doubt. "We cannot sustain a

-19-

conviction based on a mere suspicion or the possibility of guilt." *Plenty Arrows*, 946 F.2d at 65 (internal quotation omitted). Accordingly, we reverse Kenyon's conviction under Count V, the second count alleging sexual abuse by contact between penis and mouth, and remand for a judgment of acquittal on that count.

B.

Kenyon challenges the convictions on Counts II and IV (as well as Count V, if there were sufficient evidence to support it) on the ground that the district court erroneously told the jury that voluntary intoxication or drug use was not a potential defense to those counts. The court instructed the jury as follows:

> One of the issues in this case is whether the defendant was intoxicated or taking drugs at the time the acts charged in the indictment were committed.

> Being under the influence of alcohol or drugs provides a legal excuse for the commission of a crime only if the effect of the alcohol or drug makes it impossible for the defendant to have the specific intent to (a) abuse, humiliate, harass, or degrade the alleged victim, or to arouse and gratify the sexual desire of any person, or (b) to attempt to commit the act charged. Evidence that defendant acted while under the influence of alcohol or drugs may be considered by you, together with all the other evidence, in determining whether or not he did in fact have such specific intent.

> *This instruction relates only to the crime charged in Count I, the essential elements of which are set forth in Instruction 11. Being under the influence of alcohol or a drug does not provide a legal excuse for any other counts of the indictment.*

(R. Doc. 125, Final Jury Instruction No.17) (emphasis added).

-20-

Kenyon argues that the district court erred by limiting the application of this instruction to Count I. In the district court, Kenyon's objection to Instruction No. 17 was limited to a contention that the defense of intoxication or drug use should have been available with respect to Count II. (T. Tr. at 319). He conceded that the evidence on Counts IV and V did not involve an attempt to commit sexual abuse, because A.L. testified that Kenyon actually placed his penis in her mouth. (*Id.* at 317). In other words, Kenyon agreed that Counts IV and V would rise or fall on the jury's determination whether he actually caused contact between his penis and A.L.'s mouth, not on whether there was an attempt to do so, and that the intoxication instruction was thus not applicable to Counts IV and V. We think this was a correct assessment of the evidence, and in view of this colloquy, we find no plain error in the district court's instruction to the jury that being under the influence of drugs or alcohol could not be a legal excuse for the charge in Count IV or V.

Kenyon did preserve an objection to this instruction with respect to Counts II. He points out that Count II charged him with attempting to commit sexual abuse, and as we have noted, the evidence at trial showed only an attempt, because A.L. testified that Kenyon did not cause penetration. Kenyon argues that the influence of intoxication or drugs should have been available as a defense on Count II as to the element that Kenyon had the specific intent to attempt the commission of the act charged. The government responds that attempt to commit sexual abuse is not a specific intent crime.

The common law definition of "attempt" requires a showing that a criminal defendant acted with the specific intent to commit a particular offense. *Fryer v. Nix*, 775 F.2d 979, 993 (8th Cir. 1985); *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192-93 (9th Cir. 2000) (en banc). Absent an indication that Congress intended a different meaning, our cases hold that to find a defendant guilty of an "attempt" to commit a crime under a federal criminal statute, a jury must find that the defendant had the specific intent to commit that crime. *See Plenty Arrows*, 946 F.2d at 66;

-21-

*United States v. Mims*, 812 F.2d 1068, 1077 (8th Cir. 1987); *cf. United States v. Johnston*, 543 F.2d 55, 58 (8th Cir. 1976) (holding, based on convincing statutory text, that Congress did not include specific intent as an element of attempted bank robbery). The body of the district court's instruction recognized this proposition when it stated that "[b]eing under the influence of alcohol or drugs provides a legal excuse for the commission of a crime only if the effect of the alcohol or drug makes it impossible for the defendant *to have the specific intent . . . to attempt to commit the act charged.*"  (R. Doc. 125, Final Jury Instruction No.17) (emphasis added). Consistent with this language, other circuits have held that attempted sexual abuse is a specific intent crime, *United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000); *United States v. Sneezer*, 900 F.2d 177, 179-80 (9th Cir. 1990), and we agree. Accordingly, the instruction on intoxication and drug use should not have been limited to Count I on the ground that Kenyon's specific intent was not an element of the offense charged in Count II.

The government argues alternatively that even if attempted sexual abuse is a specific intent crime, there was insufficient evidence of intoxication or impairment to warrant the instruction on Kenyon's defense.  A defendant charged with a specific intent crime is entitled to an intoxication instruction when "the evidence would support a finding that [the defendant] was in fact intoxicated and that as a result there was a reasonable doubt that he lacked specific intent." *United States v. Fay*, 668 F.2d 375, 378 (8th Cir. 1981).  Although mere evidence that the defendant had been drinking is not enough to show that the district court abused its discretion in declining to give the instruction, *United States v. Phelps*, 168 F.3d 1048, 1056 (8th Cir. 1999), the instruction is required if there is "some evidence [the defendant] was drunk enough to completely lack the capacity to form the requisite intent." *United States v. Nacotee*, 159 F.3d 1073, 1076 (7th Cir. 1998).  The district court evidently believed there was sufficient evidence to warrant the instruction with respect to Count I, where both parties agreed that specific intent was an element of the offense, and the government interposed no objection based on sufficiency of the evidence.

-22-

A defendant may be entitled to the instruction even where it furthers a potential defense that is not consistent with a primary defense or his own testimony. *Mathews v. United States*, 485 U.S. 61, 63-66 (1988); *Arcoren v. United States*, 929 F.2d 1235, 1245 (8th Cir. 1991) ("[T]hat the 'recognized defense' may be inconsistent with another defense the defendant is asserting does not justify excluding evidence and failing to give an instruction on the 'recognized defense.'"); *Womack v. United States*, 336 F.2d 959, 959 (D.C. Cir. 1964) (per curiam) ("[A] defendant is entitled to an instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory.") (cited with approval in *Mathews*). In this case, for example, if the jury disbelieved Kenyon's assertions that he never attempted to make sexual contact with A.L., Kenyon was still entitled to put the government to its burden to prove that he acted with the requisite intent when he committed the prohibited act. In other words, although Kenyon pursued inconsistent defenses, he was not precluded from asserting the intoxication defense in his argument to the jury, to wit: (1) he did not commit the act of attempting sexual contact, but (2) if you find that he did commit the act, then the evidence shows at most that he did so while he was intoxicated and without the requisite specific intent. So long as there was sufficient evidence to support a finding that Kenyon was intoxicated to the point that he could not form the requisite intent, then the instruction should have been given.

After reviewing the evidence presented at trial, we conclude that there was sufficient evidence to require the instruction on intoxication and drug use as a potential defense to the specific intent element of Count II. A.L. testified that she smelled alcohol on the defendant when he was engaging in sexual acts. (T. Tr. at 43). Mona LaRoche admitted that she and Kenyon both abused illegal drugs. (*Id.* at 193). During Kenyon's cross-examination, the government asked him several times whether he drank so much that he "blanked out" – whether he "drank to the point [he] couldn't remember what was going on," including when A.L. was at the residence. (*Id.* at 262, 266-68). In one exchange, Kenyon admitted that he did. (*Id.* at 266-67).

-23-

Although Kenyon denied elsewhere that he "blanked out" from alcohol, the government countered with testimony of law enforcement agents concerning Kenyon's admissions. Al Wipperfurth, an FBI agent, testified in rebuttal that Kenyon admitted in an interview that on occasion, he drank alcohol to the level where he would "blank out." (*Id.* at 278, 282-83). Wipperfurth said that when Kenyon was asked about A.L.'s allegations of sexual abuse, he initially said that he "could not remember doing anything like that." (*Id.* at 279). The agent testified that in light of Kenyon's prior statements about "blanking out" from alcohol, he followed up by asking whether it was possible that the sexual acts with A.L. "may have occurred while Kenyon was "high or drunk or both," and that Kenyon "acknowledged that it is possible." (*Id.* at 280-281). John Vettelson, criminal investigator with the Bureau of Indian Affairs, also testified in rebuttal that he asked Kenyon in an interview about A.L.'s allegations of sexual abuse, and that Kenyon said he "could have done something like that if he was using drugs or alcohol." (*Id.* at 301). In final argument, the prosecutor twice argued that the jury should rely on Vettelson's testimony that Kenyon admitted he could have or might have sexually abused A.L. while he was drunk or high. (*Id.* at 331, 353).

In sum, there was some evidence that Kenyon committed the charged crimes while he was heavily intoxicated or "blanked out," and the jury was urged to consider this evidence in reaching its verdict. Presumably on that basis, the district court instructed the jury that intoxication was an available defense to the specific intent element of Count I. The same instruction should have applied to the specific intent element of the attempt offense charged in Count II.

The government makes no argument that the instructional error was harmless. Attempt was the only basis for conviction on Count II, and if the jury believed Kenyon was unable to form a specific intent to commit sexual abuse due to intoxication or drug use, then it was precluded by the jury instruction from giving effect to that determination. The elimination of this potential defense by a mistaken

-24-

instruction therefore requires reversal of the conviction under Count II. *See United States v. Prieskorn*, 658 F.2d 631, 636-37 (8th Cir. 1981).

IV.

Finally, Kenyon claims that the district court erred when it increased his offense level by two points for his "care, custody, or supervisory control" of A.L. *See* USSG § 2A3.1(b)(3)(A). Because we affirm Kenyon's convictions on Counts I and IV, and resolution of this sentencing issue affects the advisory guideline range for those counts, we proceed to consider it. *See United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995). The court's determination that Kenyon had supervisory control of A.L. is a factual finding, which we review for clear error. *United States v. Miller*, 293 F.3d 468, 471 (8th Cir. 2002).

A defendant has "care, custody, or supervisory control" if the victim has been "entrusted" to him. USSG § 2A3.1, comment. (backg'd); *United States v. Blue*, 255 F.3d 609, 614-15 (8th Cir. 2001) (per curiam). The enhancement may apply to anyone with "even peripheral or transitory custody," *Miller*, 293 F.3d at 472 (8th Cir. 2002) (internal quotation omitted), and there is no requirement that the defendant be entrusted with the child for a great length of time. *See also* USSG § 2A3.1, comment. (n.3). ("Teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement."). Custody also need not be exclusive. So long as the defendant has some responsibility for the child, he has been entrusted with the child, even if another shares that responsibility. *United States v. Voice*, 200 F.3d 584, 585 (8th Cir. 2000) (per curiam).

Nevertheless, "proximity" is not enough to establish that the defendant had been entrusted with the child. *Blue*, 255 F.3d at 614. We held in *Blue* that a defendant who assaulted a child in the bathroom while his mother was present in the home had not been entrusted with the child, even though the child and his mother had been living

with the defendant for six months. *Id*. at 614-15. Thus, under *Blue*, an adult is not entrusted with a child solely because he stays in the same house as that child and has some sort of relationship with the child. *Id*. Accordingly, Kenyon cannot be presumed to have been entrusted with A.L. because Mona LaRoche had temporary responsibility for A.L. or because Kenyon and A.L. spent nights in the same home.

Applying these standards, we conclude that Kenyon's testimony contained sufficient evidence to sustain the district court's finding that Kenyon himself had supervisory control over A.L. First, when asked on direct examination why he thought A.L. had accused him, Kenyon responded that she did not like him because "I made her do work with my kids, too. I treated them all, you know, if they mess up, they have to clean up." (T. Tr. at 261). On cross examination, Kenyon was asked whether he had to feed the children staying in his home, and he responded, "Yeah; [I] take them where they needed to go." (*Id.* at 265). This testimony permits an inference that he had responsibility for assigning chores to A.L., disciplining her, and caring for some of her needs. We conclude the district court did not commit clear error in finding that Kenyon shared responsibility with LaRoche for the care of A.L., *see Voice*, 200 F.3d at 585, and that A.L. was in Kenyon's "care, custody, or supervisory control."

\*     \*     \*

For the foregoing reasons, we affirm Kenyon's conviction on Counts I and IV, reverse his conviction on Count II based on an erroneous instruction to the jury, and reverse his conviction on Count V based on insufficient evidence. Because the sentence imposed was premised on four counts of conviction, we also vacate the sentence. We remand the case for entry of a judgment of acquittal on Count V and for further proceedings on the other counts consistent with this opinion.

SMITH, Circuit Judge, concurring in part and dissenting in part.

I join the majority in all respects save one. The district court's failure to give the voluntary intoxication instruction with respect to Count II was not *reversible* error.

Unquestionably, the district court instructed the jury erroneously that voluntary intoxication is not a defense to an attempt charge. However, such an instructional error is harmless if the defendant's defense was not that he was high or intoxicated. Three decisions by our sister circuits are instructive on this issue.

First, the Seventh Circuit rejected a defendant's argument that the district court should have instructed the jury, *sua sponte*, that the defendant's voluntary intoxication could negate the requisite *mens rea* required for aggravated sexual assault because the defendant was "too intoxicated to form the specific intent to knowingly engage in sexual intercourse, by force, with [the victim]." *United States v. Boyles*, 57 F.3d 535, 541 (7th Cir. 1995). While the court had "no reason to doubt" that the defendant was "inebriated at the time of the assault," it noted that the defendant "never testified that his ingestion of alcohol was to that great a degree that it impaired his judgment." *Id.* at 542. The court further explained:

> He has failed to present us with evidence to convince us of the merits of his argument that he was intoxicated to that degree of inebriation that he had no "power of reason" or that he was "utterly incapable" or knowing that he was forcing [the victim] to engage in intercourse with him. The defendant's mere post-trial statement that he was so intoxicated that he was unable to form the required intent to forcibly sexually assault [the victim] is insufficient to require that the jury be instructed on voluntary intoxication. *His entire defense was based on the theory that both parties willingly and knowingly engaged in consensual intercourse, a defense which is a stark contradiction to his appellate argument that he was too intoxicated to realize that he was forcing [the victim] to engage in intercourse.*

-27-

*Id.* (internal citations omitted) (emphasis added); *cf. United States v. Crowley*, 236 F.3d 104, 110–11 (2d Cir. 2000) (holding that where the defendants requested a voluntary intoxication instruction to a specific intent crime and the defendants' "theory of defense" was that they were "too intoxicated to form the specific intent required to commit the crimes of attempted sexual abuse and attempted aggravated sexual abuse," the district court erred in not giving the instruction).

Second, in *United States v. Nacotee*, 159 F.3d 1073 (7th Cir. 1998), the defendant argued to the district court that she was too drunk at the time of the alleged assault to form the intent necessary to sustain a charge of aiding and abetting. *Id.* at 1076. The defendant, therefore, requested that the district court give a voluntary intoxication instruction to the jury. *Id.* The district court refused to give the requested instruction, concluding that the defendant failed to present sufficient evidence at trial to show that she was sufficiently incapacitated to warrant the instruction. *Id.* On appeal, the defendant argued that the district court erred in refusing to give the requested instruction. *Id.*

The court recognized that to warrant a voluntary intoxication instruction, "the defendant must produce some evidence she was drunk enough to completely lack the capacity to form the requisite intent. If she fails to produce such evidence, no instruction is warranted." *Id.* In reviewing the evidence presented at trial, the court cited the defendant's reliance on the testimony of an FBI agent that arrested her approximately two months after the assault. *Id.* At trial, the FBI agent paraphrased the defendant's statement, explaining that the defendant indicated that she had been drinking and "not thinking right" the night and morning of the assault. *Id.* The court, however, failed to see how the FBI agent's testimony helped the defendant, as "[t]he statement that she was 'not thinking right' can hardly be considered evidence of a mental impairment." *Id.* Additionally, the court concluded that "[t]he fact that [the defendant] remembered hitting [one victim] and did not remember hitting [the other] at best indicates [the defendant] was drunk. Nothing in [the defendant's] statement as

-28-

reported by [the FBI agent] reveals anything about [the defendant's] capacity to form the requisite intent." *Id*. at 1076–77. Consequently, the court held that the district court did not err in finding that no voluntary intoxication instruction was warranted. *Id*. at 1077.

Finally, the Ninth Circuit addressed the issue of voluntary intoxication as a defense in *United States v. Garcia*, 21 F.3d 1117, 1994 WL 112884 (9th Cir. March 17, 1994) (unpublished). In *Garcia*, the defendant challenged his conviction for abusive sexual conduct, arguing that the district court erred in failing to give a jury instruction on voluntary intoxication. *Id*. at *3. The court initially noted that "[w]here a defendant's requested instruction is supported by some evidence, a trial court's failure to give it is reversible error." *Id*. Applying the plain error standard of review,[2] the court explained that a defendant is only entitled to a voluntary intoxication instruction when he presents evidence: "(1) that he was intoxicated, and (2) that his intoxication precluded him from forming the specific intent necessary to commit the crime." *Id*. at *4 (citing *United States v. Washington*, 819 F.2d 221, 225 (9th Cir. 1987)). Because the defendant "presented no expert testimony or any other evidence that his intoxication precluded him from forming the specific intent necessary to commit the crime of abusive sexual conduct," the court held that the defendant "failed to present a sufficient foundation for a voluntary intoxication instruction." *Id*. While the government did present the testimony of the victim, the victim's stepfather, and the victim's mother, indicating that the defendant was drinking on the night of the alleged offense, the court noted that the government was not presenting the evidence "for" the defendant. *Id*. The court observed that "the theory of [the defendant's] defense appears to have been that the sexual contact *never occurred*." *Id*. at *4 n.5.

---

[2]Because the defendant failed to request a voluntary intoxication instruction, the court reviewed the district court's failure to give the instruction for plain error. *Id*.

As recognized in *Boyles*, *Crowley*, *Nacotee*, and *Garcia*, the relevant inquiry is whether Kenyon provided a sufficient evidentiary foundation to support a voluntary intoxication defense. If he did not, then no reversible error occurred, as Kenyon would not be harmed by the district court's instruction to the jury that being intoxicated was not a defense to Count II.

A thorough review of the record reveals that Kenyon consistently maintained, as in *Boyles* and *Garcia*, that he did not commit the offenses at all. Unlike in *Crowley*, Kenyon's "defense theory" was not that he was high or intoxicated. Instead, as in *Garcia*, he never asserted voluntary intoxication as a defense. The government, not Kenyon, raised the "possibility" that Kenyon might have been intoxicated or high when the offenses allegedly occurred. FBI Agent Al Wipperfurth testified, as in *Nacotee*, that Kenyon admitted that it was "possible" that he committed the acts when he was high or drunk. However, Agent Wipperfurth then testified that Kenyon explained that "anybody that would do something like this would have to be sick in the head, and even if you were drunk or high, he [Kenyon] would not do something like that." Finally, like the defendant in *Boyles*, Kenyon never testified or offered evidence that alcohol or drugs impaired his judgment.

In conclusion, I agree that the district court erroneously advised the jury that voluntary intoxication could not be a defense to Count II—a specific intent crime. However, such error was harmless, and therefore not reversible error, because Kenyon failed to assert a defense of voluntary intoxication. The district court's erroneous instruction did not prejudice Kenyon.

Based on the foregoing, I respectfully dissent.

_____