Filed 9/27/16  P. v. Villalba CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY VILLALBA,<br><br>    Defendant and Appellant. | B265570<br><br>(Los Angeles County<br>Super. Ct. No. VA134302) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Raul Anthony Sahagun, Judge.  Affirmed.

John Steinberg for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Shawn McGahey Webb, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Larry Villalba was convicted of continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a)[1]).  In order to secure a conviction for this offense, the prosecutor must prove, among other things, the defendant engaged in three or more acts of substantial sexual conduct with the victim and three or more months passed between the first and last act.  Defendant contends there was insufficient evidence to establish these elements of the offense.  We reject this argument and affirm the judgment.

## BACKGROUND

### A.     Facts

#### 1.     Prosecution Evidence

R.M.,[2] born in October 1998, is defendant's step-granddaughter.  R.M.'s mother married defendant's son when R.M. was one year old.

R.M. lived with her parents and three younger siblings in Whittier.  Defendant, his wife Cathy, and their daughter Amanda, also lived in Whittier.

Cathy routinely picked up R.M. and her siblings after school and brought them to defendant's residence where Cathy babysat them until their parents picked them up after work.  Defendant had an atypical work schedule; he was home in the afternoons.  Cathy occasionally ran errands and left R.M. in defendant's care; sometimes R.M. was left alone with defendant (i.e., without her siblings).  R.M. and her siblings also visited defendant's residence "practically every weekend" and "a lot" during the summers.

R.M. testified about defendant sexually abusing her.  Defendant started doing so when R.M. was six or seven years old.  On the first occasion, R.M. was sitting on the couch in the living room watching television while defendant sat nearby using his

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

[2]     We refer to the individuals, other than defendant, either by their initials or their first names.

2

computer. Defendant called R.M. over to him and gestured for her to sit on his lap. After R.M. climbed onto defendant's lap, he put his hands inside her pants and underwear and inserted his fingers into her vagina. Defendant continued "fingering" her for about 10 minutes. That felt "weird" to R.M. and she did not know what to do. R.M. could not recall anyone else being in the house at the time.

Many similar incidents occurred thereafter. When R.M. was still six or seven years old, defendant sat close to her on the living room couch as she watched television. He placed a blanket over both of them, moved R.M. closer to him, put his hand under her clothing, and "started fingering [her]." R.M. believed they were alone in the house when this incident occurred.

On another occasion between October 2004 and October 2009,[3] R.M. was watching television in the living room with Cathy, Amanda, and defendant. Cathy and Amanda sat on the couch by the door. R.M. and defendant sat on the couch across the room, with a blanket covering them. Under the blanket, defendant inserted his fingers into R.M.'s vagina. R.M. did not say anything to Cathy or Amanda. R.M. understood defendant's actions were "bad" but thought the molestation was "[her] fault too." R.M. testified, "I didn't want to hurt anybody by saying anything. [¶] So I just didn't want anything bad to happen. I knew if I said something to [Cathy], she would get mad or something. I didn't want that to happen. So I just kept quiet."

When R.M. was "older like 10" years old, Cathy left her alone in defendant's care while Cathy ran an errand. R.M. testified, "I was on his couch and [defendant] came over to me and he laid me down and he started fingering me again but he was holding me down that time." R.M. "kind of blacked out" and when she woke up defendant was gone. R.M. "guess[ed]" she "blacked out" during "half" of the occasions defendant sexually assaulted her.

In response to being asked to give an estimate of the number of times defendant sexually abused her while Cathy was absent from the home, R.M. said: "[f]ifteen,

_____

[3]      R.M. testified defendant sexually abused her beginning when was 6 or 7 years old until she was about 10 years old.

twenty; I don't know."  She explained it was "often;" "a few times a week."  Defendant's abuse of R.M. continued until she and her family moved to Bloomington.[4]

R.M. eventually told her mother and father about defendant sexually abusing her, and shortly thereafter the police "got involved."  During separate interviews R.M. had with a Los Angeles County Sheriff's Department deputy and a detective, she said she was "touched" by defendant "about 12 to 15 times."

### 2.    *Defendant's Evidence*

Defendant and five of his family members testified on his behalf.  Defendant's five family member witnesses were Cathy (his wife), Amanda (his daughter), Ruben (his brother-in-law), Deanna (his niece by marriage), and Melissa (his niece).  One or more of them testified as follows.

It was Cathy's responsibility to look after R.M. and her siblings, although Amanda helped.  Defendant never cared for the children, and was never left alone with R.M. Defendant usually worked nights, and slept during the day.  Defendant testified he never watched television alone with R.M., never sat under a blanket with her, and never touched R.M. in a sexual way.

Several of the witnesses never observed R.M. appearing nervous, anxious, or uncomfortable around defendant, or attempting to avoid him.  Amanda, Cathy, and Deanna opined defendant was not sexually attracted to young girls, and Cathy opined defendant was an honest and truthful person.

### B.    Procedural Background

The Los Angeles County District Attorney filed an information charging defendant with of continuous sexual abuse of a child in violation of section 288.5,

---

**4**    At the preliminary hearing, R.M. testified defendant sexually touched her two to three times a week from the time she was six or seven years old until she was ten or eleven years old.  At trial, R.M. acknowledged on cross-examination this would equate to defendant having touched her hundreds of times.  She explained, "I can't give you an exact number.  I just know it was a lot."

subdivision (a) (count 1), and committing a lewd or lascivious acts involving a child in violation of section 288, subdivision (c)(1) (count 2). With respect to count 1, it was alleged that defendant engaged in substantial sexual conduct with the minor in violation of section 1203.066, subdivision (a)(8).

Following trial, the jury found defendant guilty of count 1, and found the special allegation was true. The jury acquitted defendant of count 2. The trial court sentenced defendant to state prison for the mid-term of 12 years.

## DISCUSSION

### A. Standard of Review

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) The testimony of one witness is sufficient to prove any fact. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181 ["unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction"].) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

### B.    Analysis

Section 288.5, subdivision (a) states:  "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ."  Consistent with the requirements of section 288.5, subdivision (a), the trial court instructed the jury with a modified version of CALCRIM No. 1120, which included as elements that the jury must find defendant engaged in three or more acts of "substantial sexual conduct" with the child, and "[t]hree or more months passed between the first and last acts."  The jury instruction also stated, "Substantial sexual conduct means penetration of the child's vagina by any foreign object.  A foreign object includes a finger, or any part of the body except a sexual organ."

When a defendant is charged with a violation of section 288.5, subdivision (a), "the prosecution need not prove the exact dates of the predicate sexual offenses in order to satisfy the three-month element.  Rather, it must adduce sufficient evidence to support a reasonable inference that at least three months elapsed between the first and last sexual acts.  Generic testimony is certainly capable of satisfying that requirement . . . .  [D]espite the general acceptance of such generic testimony, 'the victim must be able to describe the *general time period* in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us"), to assure the acts were committed within the applicable limitation period.'  [Citations.]  That is, while generic testimony may suffice, it cannot be so vague that the trier of fact can only speculate as to whether the statutory elements have been satisfied." (*People v. Mejia* (2007) 155 Cal.App.4th 86, 97 (*Mejia*).)

Here, R.M.'s testimony was not so vague that the jury could only speculate as to whether the elements of section 288.5, subdivision (a), were satisfied.  R.M. testified,

6

while she was six or seven years old, i.e. between October 2004 and October 2006, there were two separate occasions when defendant inserted his fingers into her vagina. Both incidents were described with specificity, e.g., the first involved defendant gesturing to R.M. to come to him while they watched television and the second was when defendant sat next to her on the couch before placing a blanket on her and molesting her. The third incident R.M. identified was without reference to a specified date (she indicated it was between the time she was six or seven years old and the time she was ten years old) but the circumstances were very similar to those of the second incident—defendant digitally penetrated R.M. while he sat with her under a blanket. Defendant abused R.M. a fourth time when R.M. was 10 years old, i.e., between October 2008 and October 2009—again R.M. described the incident with some precision, indicating it occurred while Cathy was running an errand and it involved defendant holding her down while he inserted his fingers inside her vagina.

R.M. testified about four discrete acts of digital penetration with specificity. A rational trier of fact could have concluded the acts of digital penetration commenced, *at the latest*, in October 2006 and continued, *at least* until October 2008. This constituted sufficient evidence to support the judgment. (*See People v. Jones* (1990) 51 Cal.3d 294, 315 [testimony of a child victim sufficient to prove a violation of section 288, subdivision (a) if: (1) the acts described are sufficiently specific; (2) the number of acts are committed with sufficient certainty; and (3) the general time period of the acts complies with statutory requirement].)

Citing *U.S. v. Kenyon* (8th Cir. 2007) 481 F.3d 1054 (*Kenyon*), defendant contends R.M.'s testimony was inherently improbable, and therefore defendant's conviction violated his federal constitutional right to due process.[5] Specifically, defendant contends R.M.'s testimony was not believable because (1) she could not explain the inconsistency between her prior preliminary hearing testimony that she was molested two or three times

---

[5] *Kenyon* held, in part, the victim's testimony that she was molested "maybe twice" was sufficient to establish only one, rather than two, occasions of molestation. (*Kenyon, supra,* 481 F.3d at p. 1068.)

7

per week, and her statements to the police that she was molested a total of about twelve to fifteen times; (2) she "blacked out" about half of the occasions defendant molested her; (3) Cathy and Amanda were only a few feet away while defendant inserted his fingers in R.M.'s vagina, apparently suggesting the circumstances were too risky for defendant to molest R.M.; and (4) there was evidence defendant's work schedule did not give him time to sexually molest R.M.

We are not bound by the decisions of lower federal courts. (*People v. Avena* (1996) 13 Cal.4th 394, 431.) In any event, defendant's examples of R.M.'s testimony do not establish R.M.'s accounts of digital penetration were inherently improbable or impossible to believe. They merely presented the jury with a credibility determination to be made, one we see no basis to disturb on appeal. (*People v. Williams* (2015) 61 Cal.4th 1244, 1262 ["We defer to the trial court's credibility assessments 'based, as they are, on firsthand observations unavailable to us on appeal'"]; *People v. Richardson* (2008) 43 Cal.4th 959, 1030.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KUMAR, J.[*]

We concur:

TURNER, P. J.

BAKER, J.

---

[*] Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.