# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1546

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Thomas William Frederick, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 16, 2011
Filed: July 5, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following a jury trial, Appellant Thomas William Frederick was convicted of one count of aggravated sexual abuse of a minor, one count of sexual contact with a minor, and one count of tampering with a witness. The district court[1] sentenced Frederick to 145 months in prison. Frederick now appeals, challenging two separate rulings made at trial. We affirm.

_____

[1]The Honorable Roberto A. Lange, United States District Court Judge for the District of South Dakota.

## I.

On March 9, 2010, an indictment was filed against Frederick, charging him with four separate counts: Count 1, aggravated sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D); Count 2, sexual contact with a minor, in violation of 18 U.S.C. §§ 1153, 2244(a)(3), and 2246(3); Count 3, attempted sexual abuse of a minor, in violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2)(A); and Count 4, tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3).[2] The first three counts stemmed from allegations that Frederick had sexually abused W.F. and J.F., the adopted daughters of his biological sister Kathleen Frederick, at the family ranch on the Rosebud Sioux Indian Reservation. The last count was based on Frederick's instruction to J.F. to lie to investigators about his conduct toward her. After a five day trial, the jury found Frederick guilty as to Counts 1, 2, and 4. On appeal, Frederick challenges two separate rulings made by the district court. We address each in turn.

## A.

Frederick first argues that his rights under the Confrontation Clause of the Sixth Amendment were violated when he was prevented from (1) asking W.F. if she made a false accusation of sexual abuse against her bus driver and (2) asking J.F. if she made a false accusation of sexual abuse against a school teacher. "We review evidentiary rulings regarding the scope of cross-examination for an abuse of discretion, except where the Sixth Amendment confrontation clause is implicated, and then our review is de novo." United States v. Jewell, 614 F.3d 911, 920 (8th Cir. 2010), cert. denied, 131 S. Ct. 1677 (2011).

---

[2]Frederick acknowledged by stipulation his Indian status and that the locations of the offenses charged in the indictment were situated within "Indian country" as that term is defined by 18 U.S.C. § 1151.

During his cross-examination of W.F., Frederick's counsel[3] began to ask W.F. if she knew of a bus driver named Harry DuBray. The government objected immediately, and a side-bar followed. Defense counsel represented that in the past W.F. made a false accusation of sexual abuse against DuBray after DuBray disciplined her for getting angry and acting out on the bus. Defense counsel submitted that the intended line of questioning was probative because it would show that W.F. was "a girl that will make allegations against anybody that she doesn't like." The government countered that any previous allegations of abuse against DuBray were inadmissible under the rape shield, Federal Rule of Evidence 412.[4] The district court sustained the government's objection and noted its reliance not only on Rule 412, but also on Rules 403 and 404. During recross-examination of W.F., defense counsel asked W.F. if she "ever lied about sexual abuse." W.F. responded in the negative.

The court took up Frederick's intended line of questioning outside the presence of the jury two more times before the conclusion of trial, allowing Frederick to make an offer of proof as to the alleged previous false reports. Defense counsel represented that W.F. had accused DuBray of "asking her to kiss him, having her sit on his lap, touching her improperly, and that this was an ongoing thing." Defense counsel argued that, like her allegation against DuBray, W.F. only accused Frederick of sexual abuse after he punished her for stealing his granddaughter's iPad. Counsel

---

[3]Frederick was represented at trial by two attorneys, Stanley E. Whiting and Mary Turgeon Wynne. Whiting cross-examined W.F., and Wynne cross-examined J.F. In line with this split in responsibility, Whiting and Wynne also separately handled the offers of proof as to the intended cross-examination of W.F. and J.F.

[4]"Rule 412 provides that, 'in any civil or criminal proceeding involving alleged sexual misconduct,' evidence offered 'to prove that any alleged victim engaged in other sexual behavior,' or 'to prove any alleged victim's sexual predisposition,' is not admissible, unless certain enumerated exceptions apply." United States v. Papakee, 573 F.3d 569, 572 (8th Cir. 2009) (quoting Fed. R. Evid. 412).

stated that an investigation had been initiated into the allegation against DuBray but that it was his understanding that a final report was still outstanding.

During the offer of proof, defense counsel also addressed an intended line of questioning as to J.F. Defense counsel represented that J.F. made a false allegation of sexual abuse against a teacher, Mr. Miles, allegedly accusing Miles of touching her buttocks, her breasts, and between her thighs. Counsel stated that the allegation against Miles was "fully investigated," including reports to "mandatory reporters" and to J.F.'s therapist. Counsel then represented that J.F. "simply retracted the allegation . . . as the investigation was winding up, and . . . then the allegation went away." Counsel stated that she would be able to call the principal of the school who received the report of abuse and oversaw the investigation as well as the student aide in the room who would be able to testify "that the actions just simply could not have happened." Counsel did not represent that J.F.'s allegations against Frederick or her teacher resulted from any sort of disciplinary action. Instead, at a sidebar during the cross-examination of J.F., defense counsel represented that part of J.F.'s motive was to "manipulate the system" and that J.F. made the allegations against Frederick based on her belief that doing so would allow her to move from the family ranch into town to be closer to her friends.

In response, the government maintained that the evidence relating to DuBray and Miles was inadmissible under Rule 412 and that Frederick could not show that any of the previous allegations were false. The Assistant United States Attorney also noted that he did not recall anything in the exhibits submitted by Frederick that debunked the investigation into the Miles allegation but noted his recollection that the allegation by J.F. against Miles was that Miles "was too close behind her."

After allowing Frederick to make his offer of proof, the court upheld its original decision to disallow Frederick from asking W.F. and J.F. about other allegations of sexual abuse. The court noted Frederick's arguments that the

-4-

allegations were not within the ambit of Rule 412, but ultimately concluded that Eighth Circuit precedent held to the contrary. In excluding the evidence, the court noted its reliance not only on Rule 412, but also on Rule 403 and Rule 608(b). The court did not prevent defense counsel from asking W.F. about her specific motive for bringing a claim against Frederick, including whether she blamed Frederick for being sent to a home for troubled teens.

Frederick contends that the court's reliance on Rule 412 was misplaced because "a lie about engaging in sexual abuse does not become an actual act of sexual abuse under Rule 412." Frederick argues that his intended line of questioning would have demonstrated each girl's retaliatory motive to make false claims of sexual abuse when she felt wronged by an authority figure.[5] Therefore his line of questioning was not aimed at showing that either girl engaged in other sexual behavior; instead, it would show that no sexual contact took place.

We have previously contemplated whether a false accusation of sexual abuse falls within the protective ambit of Rule 412, yet we have declined to make a determinative ruling on the issue. For example, in United States v. Bartlett, 856 F.2d 1071, 1088 (8th Cir. 1988), we noted that "there is a question whether Rule 412 reaches the use of a prior false accusation of rape for impeachment purposes" and that it had been suggested by legal commentators that such evidence was "more properly analyzed under Rule 608(b)." We declined to address the issue, however, because "[u]nder either rule, the Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against

---

[5]In his brief, Frederick focuses his argument on W.F. and seems to concede that "J.F. may not have had the same motivations that W.F. did to make a false report." He does argue, however, that J.F.'s alleged false report against her teacher "shows that children who come from abusive homes and are placed elsewhere, are very prone to report false abuse."

him." Id. (citation and internal marks omitted). Likewise, in United States v. Tail, 459 F.3d 854, 859-60 (8th Cir. 2006), we affirmed a district court that refrained from ruling whether evidence of false allegations of sexual abuse was barred by Rule 412 and instead applied its analysis under the Confrontation Clause and Rule 403.

As in Bartlett and Tail, our analysis of whether Frederick's constitutional rights were violated by the exclusion of the evidence is ultimately governed by the Confrontation Clause. As we explained in Tail:

> A primary interest secured by the Confrontation Clause is the right of cross-examination. The opportunity to expose "possible biases, prejudices, or ulterior motives" of a witness, as "they may relate directly to the issues or personalities in the case at hand," is one important function of the right to confront witnesses. Thus, the Confrontation Clause may require the admission of certain evidence otherwise excluded by the rules of evidence, but it is clear that not all evidence that is "the least bit probative of credibility" must be admitted. As pertinent here, we have held that in a sexual abuse case, evidence alleging that the accuser made prior false accusations may be excluded if the evidence has minimal probative value. And the propriety of excluding such evidence is strengthened where the prior incident is unrelated to the charged conduct, and where the defendant intends to use the evidence as part of an attack on the "general credibility" of the witness.

Tail, 459 F.3d at 860 (internal citations omitted). In Tail, we affirmed a district court's decision preventing the defendant from cross-examining his victims regarding alleged past false accusations of sexual abuse. We found no violation of the Confrontation Clause because the defendant failed to support his claim that the previous accusations of abuse were false and therefore the evidence "had only limited probative value." Id. at 860-61.

-6-

The present case is distinguishable from Tail and Bartlett in that Frederick has linked W.F.'s accusations against Frederick and DuBray through his theory of a shared retaliatory motive. However, the district court did not err in limiting cross-examination because the evidence of prior false allegations by W.F. and J.F. was still too attenuated to provide more than minimal probative value. As in Tail, the proof offered by Frederick was inconclusive as to whether the previous allegations were false. During the offer of proof as to W.F., defense counsel noted that the bus incident investigation was ongoing, and he was unable to point to any evidence beyond his own conjecture to prove that W.F.'s claim against DuBray was untrue.[6] The offer of proof as to J.F. presented a closer call, as Frederick's counsel pointed to an investigation and witnesses (including Miles) who would testify concerning J.F.'s claim of misconduct. Yet the offer of proof as to J.F. was also inconclusive—the trial court was still "left with bare allegations from both sides and no firm proof of the falsity of [J.F.'s] allegation." Tail, 459 F.3d at 861. Furthermore, although defense counsel argued that the girls' prior accusations were probative of a motive to lie, counsel failed to point to any common motivation between J.F.'s claims against her teacher and Frederick other than perhaps a generic desire to "manipulate the system." Defense counsel also conceded that the bus driver, teacher, and Frederick had no connection other than that the girls had accused each of them of sexual abuse. Therefore, we find no violation under the Confrontation Clause because the excluded evidence had very little probative value. See Tail, 459 F.3d at 860; see also Cookson

_____

[6]We note this case is distinguishable from cases relied on by the dissent. For example, in Redmond v. Kingston, 240 F.3d 590 (7th Cir. 2001), the defendant "offered more than thirty police reports of the investigation of [his accuser's] claim that she had been forcibly raped, convincingly demonstrating its falsity, and in addition the district attorney had instituted contempt charges against [the accuser]." Id. at 591. Moreover, the Supreme Court's decision in Davis v. Alaska, 415 U.S. 308 (1974), and its progeny "involve impeachment based upon credibility-impugning facts that were not in dispute." Quinn v. Haynes, 234 F.3d 837, 846 (4th Cir. 2000).

v. Schwartz, 556 F.3d 647, 653-54 (7th Cir. 2009) (rejecting habeas petition of defendant who claimed he was denied his right to cross-examine victim about a previous allegation of sexual abuse to show motive because the previous allegation was not shown to be false).

Finding no constitutional violation, we turn our review to Frederick's argument that the court erred in excluding the evidence under the Federal Rules of Evidence. In the instant case, the district court rested its decision to exclude evidence of the girls' prior accusations not only on Rule 412, but also on Rules 403 and 608(b). "The district court under Rule 608(b) may determine if evidence is probative of truthfulness and under Rule 403 may exclude evidence, even though probative, if the probative value is outweighed by the prejudicial effect." Crimm v. Mo. Pac. R.R. Co., 750 F.2d 703, 708 (8th Cir. 1984). Therefore, if the trial court's reliance on those rules was correct, we may affirm the district court's ruling and decline to reach the propriety of its reliance on Rule 412. See United States v. Purkey, 428 F.3d 738, 752 (8th Cir. 2005) ("We may affirm on any ground supported by the record . . . .").

After reviewing the offer of proof made by Frederick's counsel at trial, we agree with the district court's assessment under Rule 403 that the probative value of asking the girls about the prior accusations was substantially outweighed by the danger of "confusion of the issues" or "misleading the jury." See Fed. R. Evid. 403; United States v. Alston, 626 F.3d 397, 404 (8th Cir. 2010) ("'The Rule 403 balancing of probative value versus prejudicial effect is an integral step toward a determination of admissibility under . . . Rule 608(b).'" (citation omitted)), cert. denied, 131 S. Ct. 1842 (2011). If it was uncontroverted that prior accusations made by the girls were false, then the probative value of the evidence to demonstrate the girls' lack of truthfulness would increase, see Fed. R. Evid. 608(b), and the danger of jury confusion would decrease. See United States v. Bear Stops, 997 F.2d 451, 457 (8th Cir. 1993) (noting that where evidence of prior sex abuse was uncontroverted, the

potential for jury confusion was minimal). Yet the offer of proof was inconclusive; the parties continued to dispute the facts and truth behind each alleged claim. W.F. testified that she had not ever lied about sexual abuse. Therefore, any attempt by Frederick to prove up the falsity of the DuBray allegation "would have triggered [a] mini-trial[] concerning allegations unrelated to [Frederick's] case, and thus increased the danger of jury confusion and speculation." Tail, 459 F.3d at 861. Likewise, because the character and falsity of J.F.'s prior claim was also in dispute, the district court was within its discretion to disallow Frederick from eliciting testimony on the matter.[7] See United States v. White Horse, 316 F.3d 769, 776 (8th Cir. 2003) ("[T]he trial court retains wide discretion to exclude evidence that would result in a 'collateral mini-trial' because both sides characterize the event at issue differently.").

We find that Frederick's rights under the Confrontation Clause were not violated by the district court's decision to disallow him from asking the girls about prior instances of sexual abuse because the probative value of the evidence was minimal, in large part because Frederick's offer of proof failed to demonstrate that the prior accusations were false. Likewise, we are unable to find any error in the district court's conclusion that the probative value of allowing Frederick to cross-examine W.F. and J.F. on these matters was substantially outweighed by the danger of mini-trials and confusion of the jury. See Fed. R. Evid. 403.

---

[7]As recounted above, the district court did not prevent, nor did the government object to, Frederick's general question to W.F. whether W.F. had "ever lied about sexual abuse." We agree that if that particular question was asked of J.F., it would not have been barred by Rule 412 or by the district court's ruling specifically barring questions regarding the DuBray and Miles incidents. The district court never prevented Frederick's counsel from asking J.F. whether she had lied about sex abuse. Instead, Frederick's counsel simply never asked the question.

B.

Frederick next claims that the district court erred in prohibiting him from presenting testimony of E.S. at trial. E.S. was designated as a Rule 413 witness by the government prior to trial based on her statement that she was forcibly raped by Frederick approximately 30 years earlier. The evening before trial, the government informed Frederick that E.S. had recanted at least part of her account. When the government informed the court that it would not be calling E.S. as a witness, Frederick's counsel objected and argued that E.S. should not be released from the government subpoena. The trial court overruled the objection and allowed E.S. to leave.

Frederick argues that he should have been allowed to question E.S. to determine whether her allegations were in any way tainted by the FBI Agent who received statements from both E.S. and W.F. He points to United States v. Stewart, 445 F.2d 897 (8th Cir. 1971), where we remanded a case for further disposition when a government informant recanted his corroborative testimony after trial and there was a suggestion of perjury. However, the present case is inapposite to Stewart because E.S. was never called to testify at trial and so there is no suggestion of perjury. Accordingly, Frederick has failed to show that the district court erred in releasing E.S. from the government subpoena.

C.

Both the government and Frederick have filed motions to supplement the record on appeal. "[G]enerally, an appellate court cannot consider evidence that was not contained in the record below." Allen v. U.S. Air Force, 603 F.3d 423, 433-34 (8th Cir.) (citations omitted), cert. denied, 131 S. Ct. 830 (2010). "A 'narrow exception' to this general rule exists if misrepresentations left the district court with

-10-

an incomplete picture or the omission prevented the district court from fully and fairly considering the case, although the exception is 'rarely exercised.'" Id. at 434 (citation omitted). We are unconvinced that the exception applies in the present case, as the evidence sought to be added only continues to demonstrate that the falsity of the girls' previous accusations is in dispute. Therefore, we deny the parties' motions to supplement the record.

II.

We affirm. The parties' motions to supplement the record are denied.

BRIGHT, Circuit Judge, concurring in part, dissenting in part.

I join the majority in affirming the district court's ruling that J.F. may not be cross-examined regarding prior instances of sexual abuse, and that E.S. may not testify at trial. I also join the majority in denying the parties' motions to supplement the record on appeal. However, I respectfully dissent as to the district court's ruling disallowing Frederick's counsel from cross-examining W.F., even in a preliminary manner, to establish a basis to show that W.F. made an alleged false claim of sexual abuse against DuBray. The ruling violated Frederick's constitutional right of confrontation.

Evidentiary rulings regarding the scope of cross-examination are reviewed for abuse of discretion, but where the Sixth Amendment confrontation clause is implicated, the review is de novo. *United States v. Ragland*, 555 F.3d 706, 712 (8th Cir. 2009).

"Implicit in the constitutional right of confrontation" is a criminal defendant's right to cross-examination. *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)

-11-

(holding State's refusal to permit petitioner to cross-examine third person under Mississippi's common-law voucher rule deprived petitioner of fair trial). Cross-examination is the principal means by which a witness's credibility is tested. *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (holding refusal to allow defendant to cross-examine key prosecution witness to show his probation status following adjudication of juvenile delinquency violated his constitutional right to confront witness). And as the majority observes at page six, "[t]he opportunity to expose 'possible biases, prejudices, or ulterior motives' of a witness, as 'they may relate directly to the issues or personalities in the case at hand,' is one important function of the right to confront witnesses." *United States v. Tail*, 459 F.3d 854, 860 (8th Cir. 2006).

During cross-examination of W.F., Frederick's counsel asked, "Harry DuBray was a bus driver, right?" The government immediately objected to the question, and at side-bar, stated "[a]nything regarding Harry DuBray would be rape shield, and none of that has been disproven anyway. The fact that she had a claim against another adult or someone else isn't relevant." The district court sustained the objection, refusing to permit the cross-examination under Rules 412 and 403. Rule 412, commonly known as the rape-shield law, provides, in relevant part:

> (a) The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>> (1)  evidence offered to prove that a victim engaged in other sexual behavior; or
>> (2)  evidence offered to prove a victim's sexual predisposition.

Fed. R. Evid. 412.

By its very language, Rule 412 does not apply to W.F. In this instance, Frederick wanted to establish that W.F. had a motive to make the alleged false claim of sexual abuse against DuBray—namely that he kissed her, asked her to sit on his

-12-

lap, touched her in a sexual manner, and made sexual statements towards her—because he had disciplined her for unruly behavior. Such evidence would support Frederick's contention that for a similar reason, W.F's claims of sexual abuse against him were false.

"While 'generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks . . . no such limit applies to credibility attacks based on motive or bias.'" *Redmond v. Phil Kingston*, 240 F.3d 590 (7th Cir. 2001) (holding district court infringed defendant's constitutional right of confrontation when it prohibited him from cross-examination of alleged statutory rape victim about prior false claim of forcible rape) (quoting *Quinn v. Haynes*, 234 F.3d 837, 845 (4th Cir. 2000)). What we are faced with is not the cross-examination of a sexual abuse victim about prior false allegations to attack her general credibility; rather, the cross-examination here is to show the victim's motive to lie. *Cf. Tail*, 459 F.3d at 860 (affirming exclusion of evidence of victim's allegedly false prior accusation of abuse "where the defendant intends to use the evidence as part of an attack on the 'general credibility' of the witness").

Frederick wanted to demonstrate W.F. had a motive to lodge a false accusation against him because he and his sister had disciplined her. To do this, Frederick needed to illustrate W.F. had a motive to lie about the DuBray allegations for a similar reason—that like Frederick, DuBray had disciplined W.F. for misbehavior. As the record reflects, W.F.'s behavior while living in the Frederick home proved problematic when she had trouble accepting authority and following orders, and demonstrated temper tantrums. Trial evidence showed that around age 12, W.F. got in trouble for not following the house rules and was sent away to a home for troubled teens. W.F. did not restrain her dislike of Frederick and his sister.

Although in *United States v. Bartlett*, 856 F.2d 1071, 1088 (8th Cir. 1988) we declined to determine whether a false accusation of sexual abuse falls within the ambit of Rule 412, the circumstances there differ from this case in at least two significant ways. The defendant in *Bartlett*, who was convicted of assault with attempt to commit rape, sought to use the alleged falsity of the victim's prior accusation solely to show she was a liar—to attack her general credibility. *Id.* at 1089. He made no attempt to establish a similar motive between the prior accusation and the one against him. In contrast, Frederick attempted to show W.F.'s motivation in lodging allegations of sexual abuse against him rather than her general credibility. Further, the circumstances of the alleged prior false accusation in *Bartlett* and the incident there "were so different, the value of the inference to be drawn was minimal." *Id.* at 1088. Any inference drawn here would not be minimal as W.F.'s allegations of sexual abuse against both Frederick and DuBray are similar.

It is undisputed that W.F. endured a difficult childhood that began in an abusive home. She went through four or five foster homes before being adopted by Frederick's sister and living under Frederick's supervision. Her parents were alcoholics and abused drugs. They were also physically abusive to W.F. and her siblings. These experiences negatively affected W.F.'s development, causing her to struggle with accepting authority, and resulted in her undergoing psychological counseling. At one point, W.F. even ran away from the group home for disturbed teens. Evidence presented at trial showed W.F. often resorted to dishonesty for self-protection. Against this backdrop of psychological and personality issues, Frederick sought to show that W.F. had a motive to lie about being sexually abused by him. This showing would be important to Frederick's contention that the instant claims being prosecuted against him rested on a similar motivation on W.F.'s part.

Had the district court permitted Frederick's counsel to proceed with cross-examining W.F. about DuBray, an ordinary line of inquiry in this sort of case might

-14-

have included the following questions: Do you recall a bus driver by the name of DuBray? Did you ever ride on his bus? Was there a video camera on the bus? Were there other students on the bus? Did you claim that Mr. DuBray sexually abused you? W.F.'s responses to these fundamental questions may supply a basis for disbelieving her accusations of DuBray's alleged misconduct, and further show she had a motive for what would otherwise be a fabrication. If W.F. answered *no* to these questions, the district court could have then exercised its discretion in allowing Frederick to present evidence to the contrary. Instead, the district court's ruling deprived Frederick's counsel from asking any questions relating to an allegedly similar incident with DuBray and violated Frederick's constitutional rights under the confrontation clause.[8]

On the present record, we do not know whether the contentions that W.F. made were false. Thus, I would give Frederick the opportunity to prove his allegation that W.F. made false allegations of sexual abuse by DuBray and that such evidence had sufficient validity and probity to be admissible. I would remand the case to the district court for a hearing on the DuBray matter including the opportunity for Frederick to prove his claim of false charges by W.F. relevant to DuBray and

---

[8]I note that the majority speaks of the district court allowing Frederick to make his offer of proof with the examination of W.F. See pages 3 and 4. That is not so. The record reflects only an argument by Frederick's counsel at side-bar that he wished to make an offer of proof. Frederick's counsel should have been permitted to lay a basis for an offer of proof by questioning W.F. to show that she had made other false statements of sexual abuse.

Further the majority's assertion on page 5 that "the court did not prevent defense counsel from asking W.F. about her specific motive for bringing a claim against Frederick" is belied by the record, which shows an objection was made and sustained at the mere mention of "Harry DuBray was a bus driver, right?" Under the circumstances, any lawyer would construe the court's ruling as banning any further trial examination of W.F. on specifics about the alleged DuBray incident.

responsive evidence by the prosecution. The district court should then rule on the admissibility, or not, of Frederick's evidence on such issue and grant Frederick a new trial on Count I; otherwise, deny any relief.

I also depart from the majority's agreement with the district court's assessment of Rule 403, which permits exclusion of "relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As discussed, Frederick wanted to show W.F. had a motive to make an alleged prior false claim of sexual abuse. Any line of inquiry about the alleged false claim would be suggestive of a similarly motivated accusation of sexual abuse towards Frederick. This motivation to make a false claim, distinct from W.F.'s character for truthfulness, may be highly probative and warrants at least giving Frederick the opportunity to inquire about the existence of such a claim.

Indeed, as the majority correctly observes, W.F. testified on recross-examination that she had not ever lied about sexual abuse. However, her response to the general question of "Have you ever lied about sexual abuse?" differs from the above line of questioning which Frederick should have been permitted to pursue. While there is no connection between Frederick and DuBray, the issue here concerns W.F.'s similarly motivated accusations against each. And while Frederick's alleged statement of facts, including the outstanding report regarding the DuBray allegations, is incomplete and inconclusive, I disagree with the conclusion that any attempt by Frederick to prove the falsity of the DuBray allegation would have misled the jury or increased the danger of jury confusion. Consequently, I believe the district court erred in its application of Rule 403.

Underlying the evidentiary issues and of some concern here is the length of Frederick's sentence. That sexual abuse against children exists on Indian

reservations, where poverty, substance abuse and unemployment abound has long been a matter of great concern. Such abuse is pervasive and occurs on many Indian reservations in this country. *See United States v. Deegan*, 605 F.3d 625, 664 (8th Cir. 2010) (Bright, J., dissenting) (App. to dissent) ("American Indian children are often victims of abuse. One American Indian child out of 30 is subject to abuse or neglect. American Indian children are approximately twice as likely to be victims of child abuse than the general population of children."). The severity and frequency of such abuse reflects a human tragedy and the systematic failure of our society to successfully reduce incidences of such abuse.

As an American Indian male, Frederick has an ordinary life expectancy of fifty-eight years. *United States v. Boneshirt*, 662 F.3d 509, 524 (8th Cir. 2011) (citing Christopher J.L. Murray et al., *Eight Americas: Investigating Mortality Disparities across Races, Counties, and Race–Counties in the United States,* 3 PLoS Med. 1513, 1514 (2006)). While Frederick, age 60 at the time of sentencing, has exceeded his life expectancy, the sentence is essentially a lifetime sentence for a man who has virtually no criminal history, and who, with his sister, has provided care for many children, including those with special needs. In light of his non-existent criminal history and efforts to assist his sister in raising these displaced and orphaned children who came from abusive homes, I believe the district court should have given more weight to Frederick's background when it sentenced him to a lengthy term of 121 months (ten years and one month) in prison on Count I.[9]

_____

[9]Frederick's total prison term consists of 121 months on Count I (aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(D)) and 24 months on Counts II (sexual contact with a minor in violation of 18 U.S.C. §§ 1153, 2244(a)(3) and 2246(3)) and IV (tampering with a witness in violation of 18 U.S.C. § 1512(b)(3)), to be served consecutive to the sentence imposed on Count I. This dissent does not question the two-year sentence imposed on Counts II and IV.