BRIGHT, Circuit Judge,
concurring in part, dissenting in part.
I join the majority in affirming the district court’s ruling that J.F. may not be cross-examined regarding prior instances of sexual abuse, and that E.S. may not testify at trial. I also join the majority in denying the parties’ motions to supplement the record on appeal. However, I respectfully dissent as to the district court’s ruling disallowing Frederick’s counsel from cross-examining W.F., even in a preliminary manner, to establish a basis to show that W.F. made an alleged false claim of sexual abuse against DuBray. The ruling *921 violated Frederick’s constitutional right of confrontation.
Evidentiary rulings regarding the scope of cross-examination are reviewed for abuse of discretion, but where the Sixth Amendment confrontation clause is implicated, the review is de novo. United States v. Ragland, 555 F.3d 706, 712 (8th Cir.2009).
“Implicit in the constitutional right of confrontation” is a criminal defendant’s right to cross-examination. Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (holding State’s refusal to permit petitioner to cross-examine third person under Mississippi’s common-law voucher rule deprived petitioner of fair trial). Cross-examination is the principal means by which a witness’s credibility is tested. Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (holding refusal to allow defendant to cross-examine key prosecution witness to show his probation status following adjudication of juvenile delinquency violated his constitutional right to confront witness). And as the majority observes at page six, “[t]he opportunity to expose ‘possible biases, prejudices, or ulterior motives’ of a witness, as ‘they may relate directly to the issues or personalities in the case at hand,’ is one important function of the right to confront witnesses.” United States v. Tail, 459 F.3d 854, 860 (8th Cir.2006).
During cross-examination of W.F., Frederick’s counsel asked, “Harry DuBray was a bus driver, right?” The government immediately objected to the question, and at side-bar, stated “[a]nything regarding Harry DuBray would be rape shield, and none of that has been disproven anyway. The fact that she had a claim against another adult or someone else isn’t relevant.” The district court sustained the objection, refusing to permit the cross-examination under Rules 412 and 403. Rule 412, commonly known as the rape-shield law, provides, in relevant part:
(a) The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
(1) evidence offered to prove that a victim engaged in other sexual behavior; or
(2) evidence offered to prove a victim’s sexual predisposition.
Fed.R.Evid. 412.
By its very language, Rule 412 does not apply to W.F. In this instance, Frederick wanted to establish that W.F. had a motive to make the alleged false claim of sexual abuse against DuBray — namely that he kissed her, asked her to sit on his lap, touched her in a sexual manner, and made sexual statements towards her — because he had disciplined her for unruly behavior. Such evidence would support Frederick’s contention that for a similar reason, W.F.’s claims of sexual abuse against him were false.
“While ‘generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks ... no such limit applies to credibility attacks based on motive or bias.’ ” Redmond v. Phil Kingston, 240 F.3d 590 (7th Cir.2001) (holding district court infringed defendant’s constitutional right of confrontation when it prohibited him from cross-examination of alleged statutory rape victim about prior false claim of forcible rape) (quoting Quinn v. Haynes, 234 F.3d 837, 845 (4th Cir.2000)). What we are faced with is not the cross-examination of a sexual abuse victim about prior false allegations to attack her general credibility; rather, the cross-examination here is to show the victim’s motive to lie. Cf. Tail, 459 F.3d at 860 (affirming exclusion of evidence of victim’s allegedly false prior *922 accusation of abuse “where the defendant intends to use the evidence as part of an attack on the ‘general credibility’ of the witness”).
Frederick wanted to demonstrate W.F. had a motive to lodge a false accusation against him because he and his sister had disciplined her. To do this, Frederick needed to illustrate W.F. had a motive to lie about the DuBray allegations for a similar reason — that like Frederick, Du-Bray had disciplined W.F. for misbehavior. As the record reflects, W.F.’s behavior while living in the Frederick home proved problematic when she had trouble accepting authority and following orders, and demonstrated temper tantrums. Trial evidence showed that around age 12, W.F. got in trouble for not following the house rules and was sent away to a home for troubled teens. W.F. did not restrain her dislike of Frederick and his sister.
Although in United States v. Bartlett, 856 F.2d 1071, 1088 (8th Cir.1988) we declined to determine whether a false accusation of sexual abuse falls within the ambit of Rule 412, the circumstances there differ from this case in at least two significant ways. The defendant in Bartlett, who was convicted of assault with attempt to commit rape, sought to use the alleged falsity of the victim’s prior accusation solely to show she was a liar — to attack her general credibility. Id. at 1089. He made no attempt to establish a similar motive between the prior accusation and the one against him. In contrast, Frederick attempted to show W.F.’s motivation in lodging allegations of sexual abuse against him rather than her general credibility. Further, the circumstances of the alleged prior false accusation in Bartlett and the incident there “were so different, the value of the inference to be drawn was minimal.” Id. at 1088. Any inference drawn here would not be minimal as W.F.’s allegations of sexual abuse against both Frederick and DuBray are similar.
It is undisputed that W.F. endured a difficult childhood that began in an abusive home. She went through four or five foster homes before being adopted by Frederick’s sister and living under Frederick’s supervision. Her parents were alcoholics and abused drugs. They were also physically abusive to W.F. and her siblings. These experiences negatively affected W.F.’s development, causing her to struggle with accepting authority, and resulted in her undergoing psychological counseling. At one point, W.F. even ran away from the group home for disturbed teens. Evidence presented at trial showed W.F. often resorted to dishonesty for self-protection. Against this backdrop of psychological and personality issues, Frederick sought to show that W.F. had a motive to lie about being sexually abused by him. This showing would be important to Frederick’s contention that the instant claims being prosecuted against him rested on a similar motivation on W.F.’s part.
Had the district court permitted Frederick’s counsel to proceed with cross-examining W.F. about DuBray, an ordinary line of inquiry in this sort of case might have included the following questions: Do you recall a bus driver by the name of Du-Bray? Did you ever ride on his bus? Was there a video camera on the bus? Were there other students on the bus? Did you claim that Mr. DuBray sexually abused you? W.F.’s responses to these fundamental questions may supply a basis for disbelieving her accusations of DuBray’s alleged misconduct, and further show she had a motive for what would otherwise be a fabrication. If W.F. answered no to these questions, the district court could have then exercised its discretion in allowing Frederick to present evidence to the contrary. Instead, the district court’s ruling deprived Frederick’s counsel from asking *923 any questions relating to an allegedly similar incident with DuBray and violated Frederick’s constitutional rights under the confrontation clause.[8]
On the present record, we do not know whether the contentions that W.F. made were false. Thus, I would give Frederick the opportunity to prove his allegation that W.F. made false allegations of sexual abuse by DuBray and that such evidence had sufficient validity and probity to be admissible. I would remand the case to the district court for a hearing on the DuBray matter including the opportunity for Frederick to prove his claim of false charges by W.F. relevant to DuBray and responsive evidence by the prosecution. The district court should then rule on the admissibility, or not, of Frederick’s evidence on such issue and grant Frederick a new trial on Count I; otherwise, deny any relief.
I also depart from the majority’s agreement with the district court’s assessment of Rule 403, which permits exclusion of “relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.” Fed.R.Evid. 403. As discussed, Frederick wanted to show W.F. had a motive to make an alleged prior false claim of sexual abuse. Any line of inquiry about the alleged false claim would be suggestive of a similarly motivated accusation of sexual abuse towards Frederick. This motivation to make a false claim, distinct from W.F.’s character for truthfulness, may be highly probative and warrants at least giving Frederick the opportunity to inquire about the existence of such a claim.
Indeed, as the majority correctly observes, W.F. testified on recross-examination that she had not ever lied about sexual abuse. However, her response to the general question of “Have you ever lied about sexual abuse?” differs from the above line of questioning which Frederick should have been permitted to pursue. While there is no connection between Frederick and DuBray, the issue here concerns W.F.’s similarly motivated accusations against each. And while Frederick’s alleged statement of facts, including the outstanding report regarding the DuBray allegations, is incomplete and inconclusive, I disagree with the conclusion that any attempt by Frederick to prove the falsity of the DuBray allegation would have misled the jury or increased the danger of jury confusion. Consequently, I believe the district court erred in its application of Rule 403.
Underlying the evidentiary issues and of some concern here is the length of Frederick’s sentence. That sexual abuse against children exists on Indian reservations, where poverty, substance abuse and unemployment abound has long been a matter of great concern. Such abuse is pervasive and occurs on many Indian reservations in this country. See United States v. Dee *924 gan, 605 F.3d 625, 664 (8th Cir.2010) (Bright, J., dissenting) (App. to dissent) (“American Indian children are often victims of abuse. One American Indian child out of 30 is subject to abuse or neglect. American Indian children are approximately twice as likely to be -victims of child abuse than the general population of children.”). The severity and frequency of such abuse reflects a human tragedy and the systematic failure of our society to successfully reduce incidences of such abuse.
As an American Indian male, Frederick has an ordinary life expectancy of fifty-eight years. United States v. Boneshirt, 662 F.3d 509, 524 (8th Cir.2011) (citing Christopher J.L. Murray et al., Eight Americas: Investigating Mortality Disparities across Races, Counties, and Race — Counties in the United States, 3 PLoS Med. 1513, 1514 (2006)). While Frederick, age 60 at the time of sentencing, has exceeded his life expectancy, the sentence is essentially a lifetime sentence for a man who has virtually no criminal history, and who, with his sister, has provided care for many children, including those with special needs. In light of his non-existent criminal history and efforts to assist his sister in raising these displaced and orphaned children who came from abusive homes, I believe the district court should have given more weight to Frederick’s background when it sentenced him to a lengthy term of 121 months (ten years and one month) in prison on Count I.[9]

. I note that the majority speaks of the district court allowing Frederick to make his offer of proof with the examination of W.F. See pages 3 and 4. That is not so. The record reflects only an argument by Frederick’s counsel at side-bar that he wished to make an offer of proof. Frederick's counsel should have been permitted to lay a basis for an offer of proof by questioning W.F. to show that she had made other false statements of sexual abuse.
Further the majority’s assertion on page 5 that "the court did not prevent defense counsel from asking W.F. about her specific motive for bringing a claim against Frederick" is belied by the record, which shows an objection was made and sustained at the mere mention of "Harry DuBray was a bus driver, right?” Under the circumstances, any lawyer would construe the court’s ruling as banning any further trial examination of W.F. on specifics about the alleged DuBray incident.

. Frederick’s total prison term consists of 121 months on Count I (aggravated sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(D)) and 24 months on Counts II (sexual contact with a minor in violation of 18 U.S.C. §§ 1153, 2244(a)(3) and 2246(3)) and IV (tampering with a witness in violation of 18 U.S.C. § 1512(b)(3)), to be served consecutive to the sentence imposed on Count I. This dissent does not question the two-year sentence imposed on Counts II and IV.